FILED 09 DEC '11 14:57 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| ANTHONY J. RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | CV 10-3139-TC |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

COFFIN, Magistrate Judge:

Plaintiff Anthony Richards appeals the Commissioner's decision, under Title II of the Social

Security Act, that Richards' was no longer disabled as of August 1, 2007. The court has jurisdiction

under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

## BACKGROUND

Richards graduated from high school and attained an associates degree. Admin. R. 424. He

served in the U.S. Air Force and worked until 1999 as a helicopter mechanic. *Id.* at 438. Richards

was forty-six years old at the time of his last administrative hearing. *Id.* at 424. The administrative record reflects that Richards was found disabled due to degenerative disc disease and Hepatitis B as of January 16, 2003. *Id.* at 109-110. A continuing disability review found Richards had significant medical improvement and regained the ability to perform some type of work as of August 1, 2007. *Id.* at 63, 119, 284. Richards appealed and a hearing officer affirmed the decision on April 8, 2008. *Id.* at 118-128.

Richards filed a further appeal and a hearing was held before an Administrative Law Judge (ALJ) on March 19, 2009. The ALJ issued an opinion on April 8, 2009, finding Richards no longer disabled as of August 1, 2007, which is the final decision of the Commissioner.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The burden in on the claimant at all times to establish entitlement to disability benefits. *Tidwell v. Apfel,* 161 F. 3d. 599, 601 (9th Cir. 1998).

Richards established he was disabled as of January 16, 2003. The Commissioner conducts continuing disability reviews to determine if an individual is still eligible for benefits. 20 C.F.R. § 404.1589. A determination to terminate benefits "shall be made on the basis of the weight of the evidence and on a neutral basis without regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f). During these reviews, the

Commissioner determines whether there has been medical improvement related to the claimant's ability to work. 20 C.F.R. § 404.1594. The ALJ applied the multi-step sequential disability determination process for determining whether Richards' disability ended as set forth in 20 C.F.R. § 404.1594 (f). The ALJ found the most recent favorable medical decision finding Richards disabled was the decision dated September 13, 2004, which is know as the "comparison point decision" (CPD). Admin. R. 64.

The ALJ found Richards had not engaged in substantial gainful activity (SGA) through August 1, 2007. *Id.* at 65. He found that Richards did not develop any additional impairments after the CPD through August 1, 2007. *Id.* The ALJ determined that since August 1, 2007, Richards did not have an impairment or combination of impairments which meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, App. 1. *Id.* The ALJ determined that medical improvement had occurred as of August 1, 2007, and this improvement resulted in the ability to perform some work. *Id.* at 65, 75. The ALJ found that Richards impairments were severe. *Id.* at 75.

The ALJ assessed Richards with the residual functional capacity ("RFC") to perform medium work except that he "is precluded from working around hazards such as moving machinery or heights, he is limited to 1 to 3 step tasks, and he should have no public contact due to the effects of his pain medications." *Id.* at 72. He determined that Richards would not be able to perform his past relevant work as a helicopter mechanic. *Id.* at 75. The ALJ elicited the testimony of a vocational expert (VE) who testified there were a significant number of jobs in the national economy that Richards' could perform. *Id.* at 76, 440. The ALJ found Richards able to perform a significant

number of jobs in the national economy and that his disability ended as of August 1, 2007. *Id.* at 76.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)(citations omitted).

The ALJ is responsible for resolving conflicts in the medical evidence and determining credibility. *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001). Under this standard of review, the court must uphold the Commissioner's findings of fact, provided they are supported by substantial evidence in the record as a whole, including inferences logically flowing from such evidence. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d at 1193; *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008).

## DISCUSSION

Richards contends the ALJ erred in his assessment of medical improvement. He argues the ALJ also erred in his assessment of his RFC by improperly assessing his credibility. Richards further contends the ALJ erred in evaluating the lay witness testimony.

## I.    Medical Improvement

Medical improvement is "any decrease in the medical severity of impairments" that were present at the time of the most recent favorable medical decision of disability.    20 C.F.R. §

404.1594(b)(1). The determination of decrease in medical severity is based on "changes in the

symptoms, signs and/or laboratory findings" associated with the impairment. *Id.* The ALJ noted at

the time of the CPD that Richards was found to have Hepatitis B and degenerative disc disease of

the lumbar spine. Admin. R. 65. He also noted that Richards' RFC at the time was extremely

limited. *Id.* The ALJ thoroughly discussed the medical evidence and noted that liver function tests

in July 2007 were normal. *Id.* at 69, 328. He noted that although Richards' liver function tests were

slightly elevated in 2008, no medical treatment was warranted. *Id.* at 70, 315. Hepatitis was not

considered an active problem on examination notes in 2007 and 2008. *Id.* at 70, 227, 403.

In addition to the improvement of Richards' Hepatitis B impairment, the ALJ noted the

objective evidence regarding Richards' back impairment were limited to MRIs. *Id.* at 71. He noted

the MRIs of the cervical, thoracic, and lumbar spine showed only mild degenerative changes without

any stenosis or impingement present. *Id.* at 66, 71, 293-298. The ALJ also cited the 2005 opinion

of Dr. Calomeni. *Id.* at 65-66. Dr. Calomeni noted that Richards' was listed as one hundred

percent disabled for reasons he did not understand because Richards' MRI was unimpressive. *Id.*

at 390. Dr. Calomeni also was not willing to give narcotic pain medications until Richards' back

problem was evaluated and he noted and Richards' pain presentation was dramatic. *Id.*

The ALJ also noted the 2005 opinion of Dr. Niles, who noted a normal neurological

examination and that Richards' self-limitation in activities appeared to outweigh the anatomical and

physical examination abnormalities. *Id.* at 66, 353. She also recommended that instead of

increasing his opioid or sedative medications, he should decrease them. *Id.* At 354. The ALJ also

noted that Dr. Donnelly, a treating physician, noted in 2006 that Richards' spine pain was managed

on current medications and Dr. Donnelly referred Richards to the mental health clinic for evaluation. *Id.* at 66, 222-223.

The ALJ discussed the June 2007 opinion of Dr. Greenleaf, an examining physician. *Id.* at 67-68, 226-235. Dr. Greenleaf made several observations about Richards' pain complaints and some inconsistencies. He noted Richards lived two hours away and stated he had driven non-stop to the appointment. *Id.* at 227. Dr. Greenleaf further noted Richards was able to change from sitting to standing and get on and off the examination table without difficulty. *Id.* He also noted positive Waddell signs, including dramatized pain signs. *Id.* at 223, 229. Dr. Greenleaf noticed significant calluses and dirt staining on both hands. *Id.* He further stated Richards refused to perform a wrist movement due to pain, however, he noted Richards was able to fully support his weight on his flexed wrists during body position changes without any pain. *Id.* at 231.

Dr. Greenleaf noted Richards' entire neurological examination was mostly normal and all motor strength measurements were at the maximum score. *Id.* at 231-232. He indicated that Richards' subjective complaints of pain were not supported by objective findings and found Richards' had the ability to stand and sit for two hours at a time for up to eight hours during the day; and walk for one hour at a time up to six hours in a day. *Id.* at 233. The ALJ also noted the non-examining consultants, Drs. Eder and Pritchard found that Richards could perform medium work but should avoid workplace hazards. *Id.* at 68, 236-243, 287-288.

The ALJ also considered the October 2007 opinion letter of Dr. Donnelly. *Id.* at 69, 323. Dr. Donnelly noted that Richards' use of hydrocodone and clonazepam could affect his judgment, and therefore he would not be able to work as an airplane mechanic. He also noted that Richards' back and neck issues would limit him to non-repetitive lifting and frequent position changes and

stretching during the day. Dr. Donnelly also stated he should not engage in work on ladders or heights, and should avoid inhaled irritants.

The ALJ further considered the 2008 of Family Nurse Practitioner (FNP) Widenoja and the 2009 opinion of Dr. Donnelly. FNP Widenoja found Richards' physical capacity was work at less than a sedentary level. *Id.* at 402-407. Her opinion was signed by Dr. Carlson. Dr. Donnelly submitted an opinion in March 2009 concluding that Richards' back impairment medically equaled Listing 1.04 and that he was capable of less than sedentary work. *Id.* at 71, 412-416.

Richards argues that the opinions of Dr. Donnelly and FNP Widenoja deserved great weight and were sufficient to show that there was no medical improvement. He further argues that the ALJ erred in giving weight to the opinions of Drs. Greenleaf and Eder. The ALJ gave little weight to the last opinion of Dr. Donnelly, although he is a treating physician. Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). Dr. Greenleaf's opinion, endorsed by the ALJ, is that of an examining physician. An ALJ may reject the opinion of a treating physician if it is controverted by other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ may also reject physician opinions, whether or not controverted, when they are brief, conclusory and not supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d at 957; *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F. 3d at 1195 (treating physician's opinion properly rejected

when it was in form of a checklist, did not have supportive objective evidence, was contradicted by

other statements and assessments, and based on subjective descriptions of pain).

The ALJ noted the checklist opinion of Dr. Donnelly did not provide any objective evidence

to support an increase in Richards' impairment to meet a Listing. Admin. R. 71. He further noted

that Dr. Donnelly's last exam in 2008 indicated Richards' chronic low back pain was stable on

medication; and his 2007 letter indicated that Richards' medication would make returning to his past

work unsafe, and he would have work limitations. *Id.* at 69, 71, 317, 323. The ALJ noted that

because there was no objective evidence to support Dr. Donnelly's change in assessment it appeared

Dr. Donnelly simply adopted FNP Widenoja's assessment, which was based on subjective

complaints.

The ALJ discussed the opinion of FNP Widenoja and also gave it little weight. *Id.* at 72.

He noted that there was no evidence of an independent evaluation by Dr. Carlson. The ALJ also

noted that FNP Widenoja stated that she based her entire assessment on subjective complaints and

assumptions. He correctly found Richards' pain complaints not fully credible, as discussed below,

and so rejected FNP Widenoja's opinion based on those subjective complaints. *See, Batson v.*

*Commissioner of Soc. Sec. Admin.*, 359 F. 3d at 1195. He further noted that FNP Widenoja's

objective findings did not support the level of limitation she assessed. Admin. R. 72.

Dr. Greenleaf's opinion is supported by Drs. Eder and Pritchard, nonexamining physicians.

The Commissioner relies on medical and psychological consultants to make findings of fact about

the nature of a claimant's impairments and the severity of the functional limitations they impose.

20 C.F.R. § 404.1527(f), SSR 96-6p. These opinions may, as in this case, constitute substantial

evidence when consistent with other evidence in the record. *Morgan v. Commissioner of Social Sec.*, 169 F.3d 599, 602 (9th Cir. 1999); *Thomas v. Barnhart*, 278 F.3d at 957.

The ALJ can reject a controverted medical opinion, such as that of Dr. Donnelly, by providing specific, legitimate reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F. 3d at 1216. As noted above, the ALJ provided those reasons. He found Dr. Donnelly's opinion, which was in the form of a checklist, to be unsupported by objective evidence; contradicted by examining and nonexamining physicians; inconsistent with his treatment notes; and based on subjective complaints. He gave great weight to the opinions of Drs. Greenleaf and Eder which indicated Richards was able to work. The ALJ properly found that Richards' condition has improved.

## II.    RFC

### A.    Credibility

Richards asserts the ALJ erred in evaluating his credibility. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). Richards has medically determinable impairments which could produce some symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When making a credibility evaluation, the ALJ may consider objective medical evidence, work record, treatment history, and any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen v. Chater*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Id.* In addition, the ALJ may employ ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id. See also* SSR 96-7p.

The ALJ discussed Richards' medical improvement regarding his Hepatitis B condition, and the lack of objective medical evidence regarding his back condition. He also discussed Richards' activities including adapted gardening, caring for trees on his property, care of dogs and horses, online shopping and consulting regarding model airplanes, and social activities. Admin. R. 72-73. The ALJ also cited Richards' hearing testimony and noted that Richards' description of "his abilities changed between his reporting and his testimony despite the fact that he indicated that there had been no changes in his abilities since the CPD." *Id.* at 73.

The ALJ noted that physicians Calomeni, Niles, and Greenleaf found Richards either overly dramatic or exhibiting signs of pain not consistent with the objective findings. *Id.* Inconsistencies between exam findings and level of pain is a factor to consider in making a credibility finding. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F. 3d at 1196. The ALJ further noted that Richards testified he could not be in a car for too long without stopping to stretch, stating he would stop once or twice on a one and a half hour trip. Admin. R. 74. However, Dr. Greenleaf noted Richards made

a two hour trip for an appointment without stopping. *Id.* at 74, 227. Evidence of exaggeration is also a legitimate credibility factor. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ also noted Richards had a tendency to either misunderstand statements or to misinform subsequent physicians regarding those statements. Admin. R. 73-74. He noted that although Dr. Niles told Richards in 2005 he was not a candidate for surgery, Richards later told Dr. Greenleaf surgery would make him less mobile. *Id.* The ALJ also noted Richards reported to Dr. Bartol that he had been recently diagnosed with Post Traumatic Stress Disorder (PTSD). *Id.* at 74, 244. However, the records indicate that despite regular VA screenings for PTSD, Richards was never diagnosed with PTSD. *Id.* at 74, 213, 215, 407. Inconsistent statements to physicians is a relevant credibility factor. *Burch v. Barnhart,* 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ noted that Dr. Greenleaf's report indicated Richards refused to perform a right wrist flexion due to pain, yet, Dr. Greenleaf observed Richards fully support his weight on flexed wrists during body position changes without any signs of pain. *Id.* at 67, 231. A claimant's failure to provide "maximum or consistent" effort during a physical capacity examination is a credibility factor. *Thomas v. Barnhart,* 278 F.3d at 959.

The ALJ considered Richards' medical record, inconsistent statements, daily activities, tendency to exaggerate, and failure to give maximum effort, and concluded the allegations of Richards regarding the limiting effects of his symptoms were not supported. He considered appropriate factors and drew reasonable inferences from substantial evidence in the record in assessing Richards' credibility. The ALJ's interpretation is not irrational and is therefore upheld. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d at 1039-1040.

11 - FINDINGS AND RECOMMENDATION

**B.     Lay witness Testimony**

Richards argues that the written testimony of his wife supports the findings of Dr. Donnelly and FNP Widenoja. An ALJ cannot disregard the testimony of a lay witness without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ must give reasons that are germane to the witness. *Dodrill v. Shalala*, 12 F.3d at 919. The ALJ noted that Mrs Richards reported that Richards could manage his personal care needs; do some cooking; take out the trash; mow the acreage; drive; do computer work; watch T.V.; and spend time outside. Admin. R. 74, 165-173. He noted her description of his limitations were similar to those Richards reported, which he did not find credible. When an ALJ properly rejected a claimant's subjective complaints and claimant's spouse's testimony was similar, "it follows that the ALJ also gave germane reasons for rejecting her testimony." *Valentine v. Commissioner of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ also found much of her testimony inconsistent with the overall evidence and not supported by the medical evidence. Inconsistency with medical evidence is a germane reason for rejecting lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d at 1218. The ALJ further noted there were no reliable objective observations by Mrs. Richards that would support an alteration of Richards' RFC. The ALJ provided germane reasons for rejecting the lay testimony of Mrs. Richards.

The ALJ properly assessed Richards' RFC. He evaluated the medical evidence and reached conclusions based on substantial evidence in the record. The ALJ assessed Richards' credibility and drew reasonable inferences regarding Richards' credibility. The ALJ also properly evaluated the lay witness testimony. The ALJ's determination of Richards' RFC is free of legal error and supported by substantial evidence in the record. The court must uphold the ALJ's findings, even if evidence

exists to support more than one rational interpretation of the evidence. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

## RECOMMENDATION

Based on the foregoing, the ALJ's decision that Richards' was not disabled as of August 31, 2007 should be affirmed.

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within ten days of the date this order is filed. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

DATED this __9__ day of December, 2011.

Thomas M. Coffin
United States Magistrate Judge